1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

HANY VELETANLIC,

CASE NO. C21-0901JLR

11

Petitioner,

ORDER DENYING
28 U.S.C. § 2255 MOTION

v.

12

UNITED STATES OF AMERICA,

13

Respondent.

14

15

## I.    INTRODUCTION

16

Before the court is *pro se* Petitioner Hany Veletanlic's motion to vacate, set aide,

17

or correct his sentence pursuant to 28 U.S.C. § 2255.  (Mot. (Dkt. # 1); *see also* Prop.

18

Am. Pet. (Dkt. # 13-1); Reply (Dkt. # 19); Supp. (Dkt. # 20).)  Respondent the United

19

States of America ("the Government") opposes Mr. Veletanlic's motion.  (Resp. (Dkt.

20

# 16); Supp. Resp. (Dkt. # 22).)  The court has considered the motion, all submissions

21

filed in support of and in opposition to the motion, the relevant portions of the record, and

22

1  the applicable law.  Being fully advised, the court DENIES Mr. Veletanlic's § 2255

2  motion.

## II.    BACKGROUND

4      Below, the court recounts the factual and procedural background of Mr.

5  Veletanlic's § 2255 motion.

### A.    Factual Background

7      In February 2017, authorities in Sweden seized a Glock lower receiver with an

8  obliterated serial number from the residence of a Swedish member of a Neo-Nazi group.

9  (Presentence Investigation Report ("PSR") (CR[1] Dkt. # 153 (sealed)) ¶ 9.[2])  Law

10  enforcement eventually linked the receiver to an individual in Seattle, who told

11  authorities he had sold the firearm in an unrecorded sale to Mr. Veletanlic.  (*Id.* ¶ 11.)  A

12  cellphone seized as part of the Swedish investigation also contained Mr. Veletanlic's

13  phone number and images of U.S. Customs forms.  (*Id.* ¶ 10.)  After the individual who

14  sold the receiver to Mr. Veletanlic informed him that law enforcement agents had asked

15  about him, Mr. Veletanlic contacted federal agents and set up a meeting.  (*Id.* ¶ 12.)  At

16  that meeting, he waived his *Miranda*[3] rights and told the agents in a recorded interview

17  that in January 2017 he had posted a firearm part on eBay, that a man in Sweden had

18

19      [1] The court uses "Dkt." to refer to docket entries in this case and "CR Dkt." to refer to
    docket entries in Mr. Veletanlic's criminal case, *United States v. Veletanlic*, CR18-0162JLR

20  (W.D. Wash.).

21      [2] A "lower receiver" is "the part of the firearm that provides the housing for the internal
    components and qualifies as a 'firearm' under United States law."  (*Id.*)

22      [3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1   purchased the receiver, and that the Swedish buyer had subsequently negotiated the

2   purchases of several more guns.  (*Id.* ¶ 13.)  Mr. Veletanlic claimed that the buyer had

3   instructed him to obliterate the serial numbers, to use fictitious return addresses, and to

4   use different post offices to ship the guns to Sweden, all of which Mr. Veletanlic did.

5   (*Id.*)

6          In May 2017, Mr. Veletanlic signed a written consent form that authorized two

7   Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents to "take any

8   letters, papers, materials, or any other items/property they desire[d]," and stated that Mr.

9   Veletanlic's consent was voluntarily given, without promises or threats being made.

10  (Opp. to Mot. to Suppress (CR Dkt. #56), Ex. 2 (sealed).)  In June 2017, Mr. Veletanlic

11  entered into a formal cooperation agreement with the ATF.  (*See* Mot. to Suppress (CR

12  Dkt. # 52), Ex. B (sealed).)  Over the following weeks, Mr. Veletanlic exchanged text

13  messages and emails with the ATF agents in which he admitted to shipping more

14  firearms and disclosed the identities of two Swedish firearms recipients.  (PSR ¶ 14.)

15         In July 2017, the ATF agents met with Mr. Veletanlic at his home.  (*Id.* ¶ 15.)  Mr.

16  Veletanlic admitted to sending firearms and firearm parts to two groups of individuals in

17  Sweden, along with Glock magazines and parts to an individual in France.  (*Id.*)  Mr.

18  Veletanlic claimed that the person in France had provided him with two silencers in

19  return for the Glock parts.  (*Id.*; 1/31/19 Evid. Hearing Tr. (CR Dkt. # 148) at 63.)  Mr.

20  Veletanlic said that he had destroyed the silencers after his initial contact with law

21  enforcement, but when he opened his safe to demonstrate that the firearms it contained

22  were not stolen, an agent found a silencer inside the safe.  (PSR ¶¶ 15-16.)  Mr.

Veletanlic admitted that the silencer was one of the silencers he had received from France and had claimed to destroy.  (*Id.* ¶ 16.)  At a meeting the next day, Mr. Veletanlic told agents that he also still had the second silencer.  (*Id.* ¶ 17.)  On August 1, 2017, he surrendered that silencer.  (*Id.*)

Mr. Veletanlic was arrested in May 2018 after he made violent and threatening statements in text messages to an ATF agent.  (*Id.* ¶ 18.)  After obtaining an arrest warrant, agents arranged to meet Mr. Veletanlic in a local parking lot.  (*Id.*; *see also* 2/26/19 Trial Tr. (CR Dkt. # 150) at 131.)  Mr. Veletanlic arrived carrying a loaded Ruger pistol with an obliterated serial number tucked into his waistband.  (PSR ¶ 18.)  After his arrest, Mr. Veletanlic waived his *Miranda* rights, admitted that the pistol had an obliterated serial number, and stated that he would not be surprised if the firearm had been stolen.  (*Id.*)

The grand jury returned a four-count indictment.  (Indictment (CR Dkt. # 30).)  Count One charged Mr. Veletanlic with violating the Arms Export Control Act under 22 U.S.C. §§ 2278(b)(2) and 2278(c), based on the Glock lower receiver recovered in Sweden.  (*Id.* at 1.)  Counts Two and Three charged Mr. Veletanlic with possessing unregistered firearms under 26 U.S.C. §§ 5861(d) and 5845(a)(7), based on the two silencers seized from him in July and August 2017.  (*Id.* at 2.)  Count Four charged Mr. Veletanlic with possessing a firearm with an obliterated serial number under 18 U.S.C. § 922(k), based on the pistol he carried in his waistband on the day of his arrest in May 2018.  (*Id.*)

1    Mr. Veletanlic retained defense attorney John Henry Browne in or about August

2    2018.  (*See* 8/21/18 Mot. (CR Dkt. # 40); 9/4/18 Order (CR Dkt. # 41).[4])  Before trial,

3    Mr. Veletanlic moved to suppress both silencers.  (*See* Mot. to Suppress.)  He claimed

4    that he did not voluntarily consent to the July 2017 search of his safe in which an agent

5    discovered the first silencer and that he did not voluntarily relinquish the second silencer

6    in August 2017 because his statements about that silencer were tainted by the unlawful

7    search.  (*See id.* at 4-11.)  The Government opposed the motion (Opp. to Mot. to

8    Suppress), and the court held an evidentiary hearing (*see* 1/31/19 Evid. Hearing Tr.).

9    After hearing testimony from two federal agents and Mr. Veletanlic, the court found the

10   agents more credible and denied Mr. Veletanlic's motion.  (1/31/19 Evid. Ruling Tr. (CR

11   Dkt. # 201) at 3, 9-10.)

12   Attorney Craig Suffian joined Mr. Browne as defense counsel at trial.  (*See*

13   1/30/19 Not. (CR Dkt. # 64).)  Trial lasted three days.  (*See* CR Dkt. ## 115, 119, 123.)

14   The jury found Mr. Veletanlic guilty on all four counts of the indictment.  (*See* 2/17/19

15   Min. Entry (CR Dkt. # 123); Jury Verdict (CR Dkt. # 130).)

16   Shortly before his February 2019 trial, Mr. Veletanlic violated a special condition

17   of his pretrial bond by accessing and using an unmonitored computer and cellular phone.

18   (Violation Report (CR Dkt. # 134) at 2.)  After trial, the court granted the Government's

19   motion to detain Mr. Veletanlic pending sentencing and revoked Mr. Veletanlic's bond,

20

21   ─────────────────
     [4] Mr. Veletanlic was briefly represented by Assistant Federal Public Defender Gregory
22   Murphy.  (*See* CR Dkt. # 5.)  He was represented by private counsel Jeffrey L. Kradel between
     May and August 2018.  (*See* CR Dkt. # 14.)

based in part on Mr. Veletanlic's pretrial bond violation.  (*See* 3/7/19 Min. Entry (CR Dkt. # 145); 3/7/19 Hearing Tr. (CR Dkt. # 152) at 44-49.)

The court set Mr. Veletanlic's sentencing hearing for June 6, 2019.  (*See* 4/30/19 CR Min. Entry.)  A week before the sentencing date, the Government moved to continue sentencing for 30 days because of suspicions that Mr. Veletanlic was involved in an alleged assassination plot.  (1st Mot. to Continue (CR Dkt. # 156); Ex Parte Sealed Memo (CR Dkt. # 157 (sealed)).)  According to the Government, evidence indicated that Mr. Veletanlic, while in prison, attempted to arrange for the transfer of four guns to an undercover officer posing as a hitman, after an inmate came forward claiming that Veletanlic was plotting to kill an informant.  (Ex Parte Sealed Memo. at 2-3.)  The court granted the motion.  (5/30/19 Order (CR Dkt. # 158).)  On June 21, 2019, the court granted the Government's motion to continue sentencing for another 45 days because of the ongoing investigation.  (2d Mot. to Continue (CR Dkt. # 159); 6/21/19 Order (CR Dkt. # 161).)  The Government alleged in its sentencing memorandum that, from inside the Federal Detention Center, Mr. Veletanlic directed that multiple guns be transferred to a person he thought was associated with a violent gang who was targeting the informant and gathered addresses for the informant and passed them on to the supposed assassin. (*See* Gov't Sentencing Mem. (CR Dkt. # 168) at 4-8.)

//

//

//

//

1    After Mr. Browne and Mr. Suffian withdrew, the court appointed attorney Gilbert

2    Levy to represent Mr. Veletanlic at sentencing.  (*See* 11/12/19 CR Min Entry.[5])  After

3    several further continuances, the court held a sentencing hearing on January 27, 2020.

4    (*See* 1/27/20 Min. Entry (Dkt. # 195).)

5    The court calculated Mr. Veletanlic's sentencing guidelines range as 78 to 97

6    months based on a total offense level of 28 and a criminal history category of I.  (1/27/20

7    Tr. (CR Dkt. # 199) at 21.)  The court then considered the sentencing factors under 18

8    U.S.C. § 3553(a).  (*Id.*)  First, the court found that Mr. Veletanlic had offered no

9    explanation for illegally exporting firearms except that it was a lucrative business, and

10   that he took sophisticated steps to cover his tracks.  (*Id.* at 22-23.)  The court noted that

11   Mr. Veletanlic had lied about the silencers and had no explanation for possessing a

12   loaded firearm with an obliterated serial number.  (*Id.* at 23.)  As to the alleged

13   assassination conspiracy, the court did not find the accounts of the two prisoners who

14   alleged Mr. Veletanlic had been involved in the conspiracy credible.  (*Id.*)  It did,

15   however, find that found that recordings of Mr. Veletanlic's jail calls were inconsistent

16   with his explanation of what occurred and that Mr. Veletanlic's explanation was

17   "riddled" with fabrications.  (*Id.* at 23-24.)

18   Second, the court found that Mr. Veletanlic's personal history and medical

19   conditions were mitigating factors, but it also found that Mr. Veletanlic had repeatedly

20

21   _____

     [5] Attorney Charlie R. Varni from Mr. Browne's law office also appeared briefly in the
22   case between October and November 2019.  (*See id.*; *see also* 10/3/19 Not. (CR Dkt. # 165).)
     Mr. Levy also represented Mr. Veletanlic on appeal.

and extensively lied to the court throughout the course of the proceedings and blamed

others for his own conduct.  (*Id.* at 24-25.)  The court also found that the assistance Mr.

Veletanlic offered the government through cooperation was limited, in part because he

was too unstable to serve as a witness.  (*Id.*)

Third, the court noted the serious nature of Mr. Veletanlic's offenses, which

included sending firearms to countries that outlaw firearms and possessing silencers.  (*Id.*

at 26.)  The court found that Mr. Veletanlic showed no respect for the law, that he

deliberately and conscientiously tried to avoid the law, and that deterrence was an

important sentencing consideration.  (*Id.* at 26-27.)  The court stated that evidence that

Mr. Veletanlic had asked people to retrieve firearms that he had falsely told the court he

no longer possessed raised serious concerns.  (*Id.* at 27-28.)

As a final mitigating factor, the court noted Mr. Veletanlic's immigration status.

(*Id.* at 28.)  Based on these considerations, the court imposed a guidelines prison sentence

of 85 months—12 months below the Government's recommendation, and on the lower

end of the applicable guidelines range.  (*Id.* at 28-29.)

**B.     Procedural Background**

1.     Appeal

Mr. Veletanlic appealed his convictions and sentence, asserting six claims:

[1.]  whether the District Court erred in determining that the Defendant had
freely and voluntarily given consent to the search of his gun safe and the
seizure of the silencer that formed the basis of count 2 in the indictment[;]

[2.]  whether the District Court erred when it failed to conduct a voluntariness
hearing and failed to make a determination of voluntariness with respect to

the Defendant's admissions regarding the unregistered silencer that formed the basis of count 3 in the indictment[;]

[3.]  whether the Defendant's admission that he had a second silencer in his possession and his subsequent production of the silencer was voluntary[;]

[4.]  whether the Defendant was deprived of a fair trial, when on multiple occasions, the Government introduced bad character evidence that was inadmissible under Federal Evidence Rule 404(b)[;]

[5.]  whether the serial number on the pistol that that formed the basis of Count 4 in the indictment was altered or obliterated within the meaning of Title 18 United States Code Section 922(k)[; and]

[6.]  whether the Defendant was deprived of Due Process of law, when, prior to sentencing, the Government moved for a continuance of the sentencing based on ex parte communications with the Court.

Opening Brief at 2, *United States v. Veletanlic*, No. 20-30023 (9th Cir. July 23, 2020), Dkt. # 7.

The Ninth Circuit rejected each of Mr. Veletanlic's claims and affirmed his convictions and sentence.  *United States v. Veletanlic*, 856 F. App'x 116 (9th Cir. 2021). Mr. Veletanlic then petitioned for rehearing, which the Ninth Circuit panel denied. Order, *United States v. Veletanlic*, No. 20-30023 (9th Cir. June 2, 2021), Dkt. # 54.  Mr. Veletanlic did not file a petition for certiorari with the United States Supreme Court.  (*See* Mot. at 2.[6])

2.    § 2255 Motion

Mr. Veletanlic filed his § 2255 motion on July 3, 2021.  (Mot.)  He states four grounds upon which he claims that he is being held in custody in violation of the

---

[6] The court cites to the page numbers in the CM/ECF header when referring to Mr. Veletanlic's filings.

Constitution.  (*See generally id.*)  For Ground One, he states that he is challenging "all issues regarding Count 1 of the indictment" (*id.* at 4) and makes the following allegations regarding "individual issues [the] trial attorney failed to do":

[1.]   Attorney did not request to have the exhibit present at trial and available for inspection.

[2.]   Attorney did not object to statements made about gun part in Europe not having serial number without any evidence presented.

[3.]   Attorney did not object to handwriting comments by prosecution, did not present HSI report of no prints and handwriting being inconclusive.

[4.]   Attorney did not call HSI lab expert to testify.

[5.]   Attorney did not object to motion to extend the scope of activity where no solid evidence w[as] shown to support those claims.

[6.]   Attorney did not object to any motions [in] limin[e] including the motion to not mention im[m]igration consequences while cooperation was done under threat of deportation and evid[e]nce under this cooperation [was] used in trial against me.

[7.]   Attorney withdrew all the motions started during trial without explanation.

[8.]   Attorney did not object to false comments about me shipping suppressors where no suppressors have been shipped.

[9.]   Attorney did not raise the issue of no post office warrant and acquisition of random shipping slips with inconclusive handwriting.

[10.]  Attorney did not object to agent addressing jury and telling them how many guns I owned: "What was I supposed to do, he had 30 guns."

[11.]  Attorney did not object to motion [in] limin[e] regarding im[m]igration consequences of the prosecution.

[12.]   Attorney did not show jury that agents made threats of prosecution and deportation in order to have me produce evid[e]nce to later be used against me.

[13.]   Attorney did not request to have the original cooperation agreement available for jury to see.

[14.]   Attorney did not request volunt[a]rinses hearing regarding all of the evid[e]nce produced during my cooperation under threats.

[15.]   Attorney did not show jury the release form, giving agents access to my communication devices, accounts, passwords where agents can send communications posing as me.

[16.]   Attorne[y] did not raise the issue of "Telegram" link being found on phone in Sweden after Sw[e]dish investigator was asked to go back and open the phone in November 2018, months after I refused to take pre-indictment offers.

[17.]   Attorney did not raise the issue of HSI agent with[h]olding the text message and select email transcripts where he coached me to produce communications later used against me in trial.

[18.]   Attorney did not call Verizon experts to testify.

[19.]   Attorney did not call forensic audio expert to testify.

(*Id.* at 5-6.)

For Ground Two, Mr. Veletanlic states that he is challenging "all issues regarding Count 2 of the indictment" and makes the following allegations regarding "individual issues [the] trial attorney failed to do" (*id.* at 7):

[20.]   Attorney did not show jury that agents lied on the stand during suppression hearing. Agents claimed my version of events were not true where discovery contained July 25 2017 ROI [report of investigation] report which confirms my version of events. I testified I was held against the wall by armed agents not allowed to get near my safe while ATF agent was throwing my guns out of the safe. I pleaded with them to stop. I stated I would tell her where the

suppressor was if that would make them stop throwing my guns out of my safe.  ROI confirms this despite their false testimony.

[21.]  Agent did not expose that SMS text messages used in sup[p]ression hearing and trial were edited copies in format of JPEG where Verizon confirmed that government had original data in their posse[ss]ion which attorney failed to obtain and submit into evid[e]nce.  Instead government's tampered evid[e]nce [was] submitted into evid[e]nce and used in nearly all hearings.

(*Id.* at 9.)

For Ground Three, Mr. Veletanlic states that he is challenging "all issues regarding Count 3 of the indictment" and makes the following allegations regarding "individual issues [the] trial attorney failed to do" (*id.* at 10):

[22.]  Attorney did not request volunt[a]rines[s] hearing on any part of the cooperation or issues regarding Count 3.

[23.]  Attorney did not obtain original SMS text message data showing the agents ordered me to turn over the sup[p]ressor #2 which I did not have in my posse[ss]ion.

[24.]  Attorney did not show jury that agents used threats of prosecution and deportation to force cooperation against myself.

[25.]  Audio recordings submitted into evid[e]nce and heard by the jury were edited copies which did not match agents July 26, 2017 ROI report.  MP3 copies cannot be authenticated and trial attorney did not raise the issue pre or during trial.

(*Id.* at 11.)

For Ground Four, Mr. Veletanlic states that he is challenging "all issues regarding Count 4 of the indictment" and makes the following allegations regarding "individual issues [the] trial attorney failed to do" (*id.* at 12):

[26.]  Attorney did not request to have the Ruger pistol inspected by removing the receiver from the grip to determine if serial number was

present or oblit[e]rated. Viewing window was obstructed with rust or debris.

[27.] Attorney did not call Greg Welsh to testify about serving 'RK' a federal informant su[b]poena where RK admitted owning the Ruger LCP which he sold me.  Federal informants cannot entrap victims for government to prosecute per "CI" agreement.

[28.] Attorney did not show my attempts to turn over all guns sold to me by "RK" where ATF instructed me not to worry about them as agents did not wanna [sic] be bothered by guns from "RK" which I suspected could possibly be stolen.

[29.] Attorney did not object to comments about "ghost guns" which is a[n] extremely politicized issue.

(*Id.* at 14.)

Mr. Veletanlic also makes the following allegations regarding "indictment issues":

[30.] Did not object to motion that an alternate events were going to be argued in trial WS [sic] indictment testimony of the ATF agent. Package intercepted by customs vs recovered from a house.  HSI lab unable to link packages to me through prints or handwriting.

[31.] Agent lied about me having unregistered NFA items where trial showed she did not know until nearly [a] year later.

[32.] Did not show court/jury that ATF agent forged my search consent signature to steal my property from my car which was all legal.  She th[e]n used the guns and ammo from the car for sole purpose to influence the grand jury.  She also lied about 5000 rounds of ammo where she knew based on se[iz]ure receipt it was 1400.

(*Id.* at 14.)

Finally, Mr. Veletanlic makes the following general assertion:

[33.] All of the issues on the attached hand written pages have not been raised or made record of as the trial attorney failed to formulate trial defense.  Trial attorney refused to do the work I requested and advised me to do it on appe[a]l on my own as he was going on vacation.

1    (*Id*. at 15.)  Nowhere in his motion does Mr. Veletanlic identify which provisions of the

2    Constitution this conduct allegedly violated.  (*See generally id.*)

3        On July 20, 2021, Mr. Veletanlic filed a motion to appoint counsel.  (Mot. to

4    Appoint (Dkt. # 5).)  The court denied the motion to appoint counsel without prejudice on

5    August 9, 2021.  (8/9/21 Order (Dkt. # 8).)

6        On September 8, 2021, Mr. Veletanlic moved to amend his § 2255 motion.  (Mot.

7    to Amend (Dkt. # 13).)  To that motion he attached a proposed amended petition

8    containing twelve more allegations regarding his attorneys' alleged deficiencies.  (*See*

9    Prop. Am. Pet.)  The court granted Mr. Veletanlic's motion; stated that it would consider

10   Mr. Veletanlic's original § 2255 motion and the proposed amendment together as

11   constituting his amended motion; and extended the Government's deadline to respond to

12   Mr. Veletanlic's § 2255 motion to allow it the opportunity to address the new allegations.

13   (9/10/21 Order (Dkt. # 14).)  The allegations in Mr. Veletanlic's proposed amended

14   petition are:

15       [34.]   Attorney went on to tell jury this case was about constitution.  He
                 influenced the court that I was called a "gun nut" by the judge who
16               suggested I would run off to "2nd amendment communities."

17       [35.]   Attorney failed to show the court discovery evid[e]nce that the ATF
                 agent lacked basic gun knowledge and was not an expert.
18
19       [36.]   Attorney failed to show that the first meeting and recorded and edited
                 interview with agents was done immedi[a]t[e]ly after hospital visit
                 while heavily medicated on Xanax as evid[e]nt per record.
20
21       [37.]   Attorney failed to show that agents were aware of my medical issues
                 and attempts at treatment.  Agents were informed and fully aware I
22               was bed ridden and heavily medicated only days after surgery at the

ORDER - 14

time of my arrest.  Agents instructed me to drive to meet them in that state.

[38.]   Attorney failed to show that I was not read Miranda warning until approxim[a]tely 20 minutes prior to arriving to court building in Seattle coming from Marysville.  Mir[]anda warning was read by Agent Karabeika in the car right before the recorder was turned on.

[39.]   Attorney was unprepared for trial and unfamiliar with[] the case.  He did not attend meetings with me except to col[l]ect money. Attorne[y] went on to tell court there were 3 suppressors in this case which he attempted to articulate by counting on his hand.   Prosecution described John Henry Browne as "pathetic."

[40.]   Attorney failed to show that Agent Karabeika lied to court when asked about our communications.  Contrary to his claims, Agent Karabeika went on to call, text and email me all the way as late as end of the year 2017.  In these communications the agent instructed me to produce evid[e]nce which were later used in trial, all done under cooperation agreement and threat of prosecution with immigration consequences.

[41.]   Agent Karabeika instructed me under the same cooperation agreement to accept money from an unknown contact and turn it over to him.  I was later accused by the judge of running an illegal lucrative business.

[42.]   Attorney failed to show that agents have spent time around me with guns and open gun safe without issues of "officer safety."  Agents even instructed me to go shooting with subjects of investigation without providing me safety support as promised.

[43.]   Attorney went on to talk about "spark plugs" at suppression hearing, showing he was unprepa[]red and didn't know what he was talking about.

[44.]   Attorney did not attempt to obtain redacted emails from government agents who claims a slide was recovered rather than "frame."

[45.]   Attorney failed to show I was being punished and penalized for exerci[s]ing my right to trial by not showing that government asked me to make a "counter offer" to their offer of 36 mont[h]s.  For having a trial, I've received 85 months sentence instead and was denied defense by John Henry Browne who advised me to argue my case on the appeal as he is going on vacation per record.

(Prop. Am. Pet. at 1-2.)  Mr. Veletanlic does not identify which—if any—of his four

asserted grounds for relief these additional allegations support.  (*See generally id.*)  The

court granted the Government additional time to respond to the amended motion.  (*See*

9/10/21 Order.)  Subsequently, the court granted Mr. Veletanlic an extension of time,

until December 13, 2021, to file his reply to the Government's response to his motion.

(*See* 10/8/21 Order (Dkt. # 17).)

      Mr. Veletanlic filed his reply on November 26, 2021.  (*See* Reply.)  In his reply,

Mr. Veletanlic did not address the Government's arguments in opposition to his motion.

(*See generally id.*)  Instead, he again listed various alleged failures or omissions by his

attorneys; pointed out his disagreements with the Government's recitation of the

background facts in its response; and provided a March 2020 email from his expert

witness Greg Walsh that, he asserts, supports his need to carry a weapon for self-defense.

(*See generally id.*)

      On January 10, 2022, Mr. Veletanlic filed a supplement to his motion.  (Supp.)  To

his supplement he attached copies of two August 2, 2017 Reports of Investigation

prepared by one of the ATF agents; excerpts of hearing, trial, and grand jury transcripts;

and copies of other ATF documents related to his case.  (*See id.*, Exs. 1-5.)  Mr.

Veletanlic stated he was providing only limited documents because he did not have

access to all of his discovery documents or "the withheld evid[e]nce" in the

Government's possession.  (*See id.* at 1.)  He did not, however, describe the allegedly

withheld evidence, nor did he explain which of his stated grounds for relief, if any, the

1    documents he provided support.  (*See generally id.*)  The court accepted Mr. Veletanlic's

2    supplement; allowed the Government an opportunity to respond to the supplement; and

3    authorized Mr. Veletanlic to file a reply to the Government's response.  (*See* 1/13/22

4    Min. Order (Dkt. # 21).)  Although the Government filed a response, Mr. Veletanlic did

5    not file a reply to that response.  (*See* Supp. Resp; *see generally* Dkt.)  Accordingly, Mr.

6    Veletanlic's § 2255 motion is now ripe for decision.

7                              **III.    ANALYSIS**

8          The court begins by addressing the legal standard for motions under 28 U.S.C.

9    § 2255.  It then discusses whether an evidentiary hearing is necessary before turning to its

10   analysis of Mr. Veletanlic's claims and whether Mr. Veletanlic is entitled to a certificate

11   of appealability.

12   **A.    Legal Standard for Motions Under 28 U.S.C. § 2255**

13         A petitioner seeking relief under 28 U.S.C. § 2255 must prove the existence of an

14   error rendering his conviction unlawful.  *See Simmons v. Blodgett*, 110 F.3d 39, 42 (9th

15   Cir. 1997); *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Bell v. United*

16   *States*, No. C19-2018JCC, 2020 WL 3542503, at *2 (W.D. Wash. June 30, 2020).  A

17   prisoner in custody for a federal law violation may move to vacate, set aside, or correct

18   the sentence under four circumstances:  where (1) "the sentence was imposed in violation

19   of the Constitution or laws of the United States"; (2) "the court was without jurisdiction

20   to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by

21   law"; or (4) the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

22

1   Pursuant to § 2255(f), a petition for habeas relief must be brought within one year of the

2   date on which the judgment of conviction became final.  *See id.* § 2255(f)(1).

3   **B.    Timeliness and Procedural Matters**

4           As a threshold matter, Mr. Veletanlic's motion is properly before the court.

5   Because he is currently incarcerated, Mr. Veletanlic meets § 2255's "custody"

6   requirement.  *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).  In

7   addition, Mr. Veletanlic timely filed the instant motion.  Because he did not file a petition

8   for a writ of certiorari with the Supreme Court, his conviction became final in October

9   2021, when the time for filing such a petition expired.  *Clay v. United States*, 537 U.S.

10  522, 527 (2003); Order Relating to COVID-19 and Petitions for Certiorari, 589 U.S. ___

11  (March 19, 2020), (temporarily extending the deadline for filing a petition for certiorari

12  to 150 days from the date of entry of the judgment or order sought to be reviewed during

13  the COVID-19 pandemic).  Here, Mr. Veletanlic filed his motion on July 3, 2021, one

14  month after the Ninth Circuit denied his petition for rehearing and more than a year

15  before the October 2022 filing deadline.  (*See* Mot.); Order, *United States v. Veletanlic*,

16  No. 20-30023 (9th Cir. June 2, 2021), Dkt. # 54.  Accordingly, Mr. Veletanlic has met the

17  procedural prerequisites.

18  **C.    Evidentiary Hearing**

19          The court determines that an evidentiary hearing on the merits of this matter is

20  unnecessary.  Under § 2255, the court must hold an evidentiary hearing unless "the

21  motion and the files and records of the case conclusively show that the prisoner is entitled

22  to no relief."  28 U.S.C. § 2255(b).  However, "[n]o hearing is required if the allegations,

viewed against the record, either fail to state a claim for relief or are so palpably

incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*,

878 F.2d 1156, 1158 (9th Cir. 1989); *United States v. Howard*, 381 F.3d 873, 879 (9th

Cir. 2004) (holding that no evidentiary hearing is required unless the petitioner raises

"detailed and controverted issues of fact").  In addition, no hearing is required when the

issue of the prisoner's credibility can be "'conclusively decided on the basis of

documentary testimony and evidence in the record.'"  *United States v. Espinoza*, 866 F.2d

1067, 1069 (9th Cir. 1988) (quoting *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.

1988)).

 Here, the court concludes that the detailed record in this matter, which

encompasses numerous hearings and three days of trial (*see generally* Dkt.), is a

sufficient basis on which to evaluate Mr. Veletanlic's credibility, decide his claims, and

determine that he is entitled to no relief.  Accordingly, the court exercises its discretion

not to hold an evidentiary hearing.  *See Shah*, 878 F.2d at 1158.

**D.   Ineffective Assistance of Counsel**

 Although Mr. Veletanlic does not expressly state the constitutional basis for his

§ 2255 motion, the court construes the motion as alleging claims of ineffective assistance

of counsel in violation of the Sixth Amendment.[7]  (*See* Mot. at 4, 7, 10, 12 (stating his

---

[7] Only one of Mr. Veletanlic's allegations appears to be based on conduct by someone other than his attorney.  In allegation 8 in his proposed amended petition, Mr. Veletanlic states, "Agent Karabeika instructed me under the same cooperation agreement to accept money from an unknown contact and turn it over to him.  I was later accused by the judge of running an illegal lucrative business." (Prop. Am. Pet. at 2; *see supra* Section II.B.2, allegation 41.)  The court construes this allegation as alleging governmental misconduct and rejects it as procedurally

1   attached notes "outline[] individual issues trial attorney failed to do" related to each of

2   the four counts of the indictment); Prop. Am. Pet at 1-2 (describing additional alleged

3   acts or omissions by his attorney).[8])

4       Mr. Veletanlic's ineffective assistance of counsel claims are controlled by

5   *Strickland v. Washington*, 466 U.S. 668 (1984).  To show ineffective assistance under

6   *Strickland*, a petitioner must prove that (1) counsel's performance was deficient; and (2)

7   the deficient performance prejudiced the defense.  *Id.* at 688, 694.  To establish that

8   counsel's performance was deficient, a petitioner must show that counsel's performance

9   "fell below an objective standard of reasonableness."  *Id.* at 688.  The court considers

10  whether, "in light of all the circumstances, the identified acts or omissions were outside

11  the wide range of professionally competent assistance."  *Id.* at 690; *see also id.* at 687

12  (noting that "counsel [must have] made errors so serious that counsel was not functioning

13  as the 'counsel' guaranteed the defendant by the Sixth Amendment").  At this step,

14  judicial scrutiny is highly deferential:  there is a strong presumption that counsel's

15

16  defaulted.  Procedural default occurs when a habeas petitioner fails to raise a claim on direct
    appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Braswell*, 501

17  F.3d 1147, 1149-50 (9th Cir. 2007).  The general rule is that procedural default bars presentation
    in a federal habeas action of a claim not raised on direct appeal.  *See Braswell*, 501 F.3d at 1149-

18  50.  Mr. Veletanlic did not raise his government misconduct claim on direct appeal and has made
    no attempt to argue that the procedural default should be excused.  (*See generally* Reply; Supp.)

19  Accordingly, he cannot raise this claim now.

20      [8] Mr. Veletanlic appears to make additional allegations about his attorneys' performance
    in his reply.  (*See generally* Reply.)  The court need not consider those allegations, however,

21  because a petitioner is not permitted to raise new allegations in reply.  *See United States v.
    Tanke*, No. 2:09-cr-0293 WBS KJN P, 2016 WL 6248413, at *8 (E.D. Cal. Oct 26, 2016).  Even

22  if the court were to consider the allegations, however, they would fail for the reasons set forth
    below.

1    performance fell within the wide range of reasonably effective assistance.  *Id.* at 689.  To

2    establish that counsel's performance prejudiced the defense, a petitioner "must show that

3    there is a reasonable probability that, but for counsel's unprofessional errors, the result of

4    the proceeding would have been different.  A reasonable probability is a probability

5    sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also id.* at 693 ("It is

6    not enough for the defendant to show that the errors had some conceivable effect on the

7    outcome of the proceeding.").  Thus, even if counsel made a professionally unreasonable

8    error, it does not warrant setting aside the judgment if the error had no effect on the

9    judgment.  *Id.* at 691.

10        A court addressing a claim of ineffective assistance of counsel need not address

11   both prongs of the *Strickland* test if the petitioner's showing is insufficient as to one

12   prong.  *Id*. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of

13   lack of sufficient prejudice, which we expect will often be so, that course should be

14   followed."  *Id.*  Moreover, allegations that are speculative and conclusory are insufficient

15   to prove that counsel provided ineffective assistance.  *Blackledge v. Allison*, 431 U.S. 63,

16   74 (1977); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

17        At the outset, the court cannot conclude that defense counsel's representation fell

18   outside the "wide range of reasonably effective assistance."  *See Strickland*, 466 U.S. at

19   689.  Mr. Veletanlic's allegations relate to his disagreements with his trial attorneys'

20   strategy with respect to introducing or not introducing certain evidence, making or not

21   making certain objections, or pursuing or not pursuing certain lines of questioning, in

22   addition to their alleged failure to prove his version of the facts.  (*See generally* Mot.;

Prop. Am. Pet.)  Although he lists 45 alleged errors, he does not direct the court to the relevant portions of the trial transcripts or briefing to facilitate the court's review of those allegations.[9]  The court has, however, reviewed the trial and hearing transcripts in Mr. Veletanlic's criminal matter and defense counsel's submissions to the court and cannot find, based on this review and on the court's own recollections of the proceedings, that counsel's performance during Mr. Veletanlic's trial "fell below an objective standard of reasonableness," particularly in light of the highly deferential standard that applies here. *Strickland*, 466 U.S. at 688, 689.  Indeed, Mr. Veletanlic's allegations are at best unsupported by the record, and at worst flatly contradicted by the record.  Thus, Mr. Veletanlic has failed to demonstrate objective unreasonableness with respect to any of his ineffective assistance theories.  *See Strickland*, 466 U.S. at 687-94.

Even if Mr. Veletanlic were able to demonstrate that counsel's performance was deficient in some respects, the court concludes that he has not met his burden to show prejudice.  At no point in his briefing does he address how the result of the proceeding would have been different absent counsel's alleged errors.  *Id.* at 694; (*see generally* Mot.; Prop. Am. Pet.; Reply.)  Indeed, as the court observed at sentencing, the Government's case at trial was uncontroverted and Mr. Veletanlic repeatedly undermined his case through his own dishonesty.  (*See* 1/27/20 Tr. at 22-23.)  Accordingly, Mr. Veletanlic's claim fails under *Strickland* because he does not point to any specific

---

[9] Although Mr. Veletanlic provided some transcript excerpts and documents with his supplement, he did not explain which of his 45 allegations these documents support.  (*See generally* Supp.; *id.* Exs. 1-5.)

1    prejudice that was caused by counsel's alleged acts, failures, or omissions.  *See United*

2    *States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), *as amended* (Sept. 4, 1998)

3    (noting that while detailed evidence is not required, the petitioner must at least "make

4    specific factual allegations which, if true, would entitle him to relief").  Mr. Veletanlic's

5    § 2255 motion is, therefore, DENIED.

6    **E.     Certificate of Appealability**

7        As a final matter, the court notes that a petitioner seeking post-conviction relief

8    may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining

9    a certificate of appealability.  A certificate of appealability may issue only where a

10   petition has made "a substantial showing of the denial of a constitutional right."  28

11   U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of

12   reason could disagree with the district court's resolution of his constitutional claims or

13   that jurists could conclude the issues presented are adequate to deserve encouragement to

14   proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard,

15   the court concludes that Mr. Veletanlic is not entitled to a certificate of appealability.

16                          **IV.     CONCLUSION**

17       For the foregoing reasons, the court DENIES Mr. Veletanlic's 28 U.S.C. § 2255

18   motion to vacate, set aside, or correct his sentence (Dkt. # 1).  The court DISMISSES this

19   matter with prejudice and DECLINES to issue a certificate of appealability.

20   //

21   //

22   //

ORDER - 23

1     Dated this 11th day of March, 2022.

2

3

4                                   JAMES L. ROBART
United States District Judge

ORDER - 24